Gabrielli, J. (dissenting).
Certainly the record in this case, relevant policy considerations and even precedent, cannot account for or sustain the result reached by the dissenter at the Appellate Division, upon whose opinion the majority have concluded the order of the Appellate Division should be reversed.
A brief recitation of the background factual picture is in order. The respondent is charged with the duty of conducting a “ State Fair ” (Agriculture and Markets Law, § 16, subd. 28; § 31-b), held annually for many years at Syracuse, N. Y. In 1971 the petitioner arranged to have an exhibit at the Art and Home Center of the fair and was invited to make a presentation of his plans for the exhibit. He made no mention of any plans to distribute the “ comic book ” here in issue. Following his presentation, petitioner was granted free exhibition space for his proposed exhibit. After the fair was in progress, respondent’s staff received numerous complaints from fairgoers that he was distributing a comic book entitled “ Zing C'omixTen Heavy Facts About Sex ” to minors at his exhibit in the Art and Home Center building which is specially devoted to home and family type exhibits. When confronted with the complaint by the Director of the Fair that this was contrary to policy and harmful to children, petitioner agreed to cease dis *929 tribution. However, on the very next day it was learned that the book was nonetheless being distributed by inserting it in a packet of other materials being handed out to the public, young and old.
In 1972 petitioner again sought complimentary exhibit space in the Art and Home Center and his request was denied. He then sought rental space which was offered to him provided he would give reasonable assurance that the 16 comic book ” would not be made available to minors without the consent of their parents or any other adult responsible for the child attending the fair. Petitioner rejected this proposal because, inter alia, he stated his book was aimed at children in the 14-year-old age bracket.

THE COMIC BOOK

The 20-page “ comic book ” in issue contains various areas of alleged 1 ‘ sex education ’ ’ which it seeks to portray for the intended 14-year-old class; and included in the book are various subjects of claimed sex education containing several categories entitled Masturbation, Homosexual, Penis Size, Pornography, Birth Control and Abortion.
Space does not permit a reproduction of its contents but a few excerpts of the information and advice advanced and furnished to these children will serve to indicate its nature. In the section entitled “ Homosexual ” the young people receiving the book are told that “ A homosexual is a person who in his adult life prefers and has sex relations with members of the same sex ” and the recipient is then advised that “ [n] either homosexual thoughts nor homosexual experiences during adolescence need influence the rest of your life. So choose the sexual life you want. * * * Letting yourselves be bothered about fears of homosexuality is a waste of time ’ ’. In the section under “ Masturbation ”, they are advised that “ [t]here’s no harm in masturbation no matter how often you do it”. And then under the subject of “ Perversions ” the recipient is told that “ A lot of people wonder about oral or anal sex, and some people think it is ‘ perverted.’ We think there is nothing wrong with any kind of sex if both partners are mature and it doesn’t hurt anyone. ’ ’ Then again, the article entitled ‘1 Pornography ’ ’ tells the reader that “ [p]ornography is harmless ”.
It can be readily seen that, in addition to other similar advice, the youthful recipient is encouraged to engage in homosexual *930 experiences, to discard any thoughts of the evils of pornography and that finally there is nothing really wrong with oral or anal sex.
Each year substantial public funds are expended on fair programs designed to attract children, and from 153,000 to 175,000 children, 16 years of age or younger attend, according to actual counts taken during the four years preceding the year here in question. The nature and purpose of the fair, attuned as it is to family participation, has always had a strong attraction for children; and the attractions include all sorts of juvenile competitions, projects and contests. Many are sent via school buses from all over the State, obviously with the understanding on the part of the parents that their children will engage in healthy and wholesome activities, and certainly not be exposed to some of the activities encouraged and espoused by this so-called comic book, which in size, content and format is directly aimed at young children. In short, when the State undertakes to sponsor such a fair and attracts children in large number, no one has a right to insist on unrestricted access to promote such ideas as are depicted in this book, on juvenile audiences of fertile young minds and, in order to insure against such occurrences, the State has a perfect right, and indeed, under the circumstances present, an obligation to also protect the rights of the parents.
Referring to but one of petitioner’s areas of advice and encouragement to young children, to wit, to commit homosexual acts, no one need be reminded that such acts between persons, one of whom is under 17 years of age, constitutes a crime (Penal Law, §§ 130.05, 130.20) and that such an incident or acts may well dramatically affect the minor’s life in a harmful manner. Even on this basis alone, respondent is certainly entitled to regulate the distribution of the comic book which directly or by implication encourages minors to participate in a criminal act.
Contrary to the view taken by the petitioner, there is no infringement of any First Amendment rights. The framers of the Constitution and, indeed, judicial and the other authorities who have addressed themselves to the First Amendment rights never intended that the types of urgings and encouragements inflicted on young children by this alleged comic book, would ever receive the imprimatur or be given the stamp of approval as condoned by the dissenter below; and this is so even if a *931 portion of the book may pass scrutiny — for the several “ rotten apples ” depicted have, of necessity, infected the whole “ barrell Indeed, the dissenter (p. 498) did “ not doubt that the State has the power to impose greater restrictions on forms of expression directed at children than it would have if such expressions were intended for adults. That proposition has been firmly implanted by the United States Supreme Court (Ginsberg v. New York, 390 U. S. 629) and by our own Court of Appeals (Bookcase, Inc. v. Broderick, 18 N Y 2d 71).” Thereafter he quotes from then Judge Fuld’s concurring opinion in People v. Kahan (15 N Y 2d 311, 313) to support his view but there is avoided a prior portion of that opinion wherein Judge Fuld stated that “ [w]hile the supervision of children’s reading may best be left to their parents, the knowledge that parental control or guidance cannot always be provided and society’s transcendent interest in protecting the welfare of children justify reasonable regulation of the sale [or distribution] to them ” (15 N Y 2d 311, 312). The Supreme Court quoted this last passage with approval in Ginsberg v. New York (390 U. S. 629, 640). In that case the court further made clear that even in the area of a claimed First Amendment right, the State may control areas affecting children to an extent far greater than its scope of authority over adults. We must recognize, of course, the State’s right to bar distribution of objectionable material to children even though it may be suitable for adults; and that the material may be deemed to be objectionable for children without regard to the traditional concept of “ obscenity ” (Bookcase, Inc. v. Broderick, supra). Here, the respondent is the representative of the State and as reasoned in the concurring opinion of Presiding Justice Heblihy (p. 498) below “ the Commissioner [of Agriculture and Markets] is the representative of the State and should have no less power than the Commissioner of Education in regard to the dissemination of literary material in schools ”,
The respondent commissioner, charged as he is with the responsibility of operating the fair within proper and legal bounds, did not abuse any discretion thus imposed upon him, nor was there any violation of any First Amendment guarantee.
The order should be affirmed, with costs.
Order reversed, etc.